UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| BECKY SUE BARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-936 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits (DIB). On January 4, 2011, plaintiff filed her application for benefits. (A.R. 158-66). She claimed an December 1, 2007, onset of disability. (A.R. 158). Her disability insured status expired on March 31, 2009. Thus, it was plaintiff's burden on her claim for DIB benefits to submit evidence demonstrating that she was disabled on or before March 31, 2009. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claim was denied on initial review. On May 10, 2012, plaintiff received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 27-55). On June 8, 2012, the ALJ issued his decision finding that plaintiff was not disabled. (A.R. 14-23). On July 15, 2013, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. She asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ committed reversible error "by not properly considering" the opinions of a treating physician and a consultative physician; and

2. The ALJ "did not follow the vocational expert's answers to accurate hypothetical questions."

(Plf. Brief at 12, docket # 13).  I recommend that the Commissioner's decision be affirmed.

### **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court

interference." *Buxton*, 246 F.3d at 772-73.  "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion.").  "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

### Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on December 1, 2007, through March 31, 2009, but not thereafter.  (A.R. 16). Plaintiff had not engaged in substantial gainful activity[1] on after December 1, 2007.  (A.R. 16). Through her date last disability insured, plaintiff had the following severe impairments: "degenerative disc disease, degenerative joint disease, arthritis and bilateral carpal tunnel status post release [in 1989 and 1999]."  (A.R. 16).  Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments.  (A.R. 17).  The

---

[1]Plaintiff worked as a daycare provider "from 2004 to September 1, 2010." (A.R. 16).  She "did not report any income after 2005."  (A.R. 16).  The ALJ found that the work plaintiff performed during the period she claims to have been disabled did not rise to the level of substantial gainful activity.  (A.R. 16).

ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally perform postural movements but can never climb ladders, ropes or scaffolds. The claimant is limited to frequent bilateral handling and fingering.

(A.R. 17). The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible:

> At the hearing, the claimant stated that she worked as a grocery store stocker from 1992-2003. She reported that she worked as a childcare provider from 2004 to around 2010. She stated that she ran a daycare out of her home. She testified that she was caring for the children fulltime, until they started kindergarten in around 2008. After 2008, she watched them before and after school. In 2009, when her daycare work slowed down, she took care of housework and did housecleaning, laundry, and cooking. She was able to drive and shop in stores. She said she has ongoing numbness and tingling in her hands due to carpal tunnel (Hearing Testimony).
>
> After careful consideration of the evidence, the undersigned finds that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The record indicates that the claimant had relatively busy activities of daily living. She continued to work in her daycare business until after her alleged onset date and her date last insured. The claimant reported she stopped working in her daycare business in September 2010, in part, due to lack of children (Exhibit 2E). Treatment notes show she remained active. For example, physical therapy notes from July 2009 show the claimant could operate her motorcycle safely, and was able to bend and squat as needed to care for children at her daycare (Exhibit 2F, p. 11). The claimant reported in February 2011, that she handled personal care needs. She cooked, cleaned dishes, washed clothes, cleaned her cat litter box, and did some yard work such as raking. She drove to the store and to her daughter's house (Exhibit 5E). Additionally, the claimant reported ongoing marijuana use, and a drug screen in November 2010 was positive for cannabis (Exhibit 6F, p. 13; Exhibit 7F). The claimant reported having a medical marijuana card, and it is unclear why she needs prescription marijuana (Exhibit 10, p. 5).
>
> The medical evidence of record shows that the claimant has a history of carpal tunnel. She is right hand dominant and had right carpal tunnel release surgery in 1989 and 1999 (HT;

>Exhibit 4F, p. 23). In February 1999, the claimant underwent a left carpal tunnel release (Exhibit 4F, p. 22). In December 2006, the claimant reported ongoing tingling in her hands. She was referred to physical therapy. Her follow-up notes from January 4, 2007, show she reported doing considerably better (Id., p. 6). The record does not show that the claimant continued to seek ongoing treatment for her carpal tunnel syndrome (Id.). She does not appear to require wrist braces. The claimant's busy activities of daily living after her date last insured, as discussed above, do not indicate her carpal tunnel causes severe restrictions. The claimant was able to ride her motorcycle, handwrite disability application forms, drive, handle personal care needs, and perform household chores (Exhibit 2F; Exhibit 5E). Nevertheless, due to the claimant's history of carpal tunnel syndrome and arthritis, the residual functional capacity limits the claimant to frequent handling and fingering.
>
>\* \* \*
>
>Due to the claimant's ongoing pain complaints and the objective medical findings, the claimant is limited to light work. She is limited to occasional postural movements and can never climb ladders, ropes or scaffolds. The claimant is also limited to frequent handling and finger due to her history of carpal tunnel syndrome. The parameters of the residual functional capacity sufficiently accounts for the claimant's limitations.
>
>Nothing in the claimant's clinical signs suggests that the residual functional capacity assessment is unreasonable. Nor does the medical record reflect a treatment regimen inconsistent with such limitations. In sum, the above residual functional capacity assessment is supported by the medical evidence of record, the claimant's lack of treatment, and lack of credibility in some areas, and the inconsistencies in other areas. Given the claimant's less than full credibility, the undersigned is persuaded that the foregoing limitations contain all inferences regarding the claimant's impairments and the degree of severity thereof, which are raised by the objective and credible evidence of record, and that a further degree of restriction is not warranted.

(A.R. 17-21). The ALJ found that through her date last insured, plaintiff was not able to perform any past relevant work. (A.R. 21). Plaintiff was 49-years-old as of her alleged onset of disability, and she was classified as a younger individual through October 13, 2008. From October 14, 2008, through her date last disability insured, plaintiff was 50-years-old and classified as an individual closely approaching advanced age. (A.R. 22). Plaintiff has at least a high school education and is able to communicate in English. (A.R. 22). The ALJ found that the transferability of job skills was not material to a disability determination. (A.R. 22). The ALJ then turned to the testimony of a

vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were more than 4,300 jobs in the Grand Rapids, Michigan region that the hypothetical person would be capable of performing. (A.R. 48-49). The ALJ found that this constituted a significant number of jobs. Using Rules 202.21 and 202.14 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 22-23).

**1.**

Plaintiff argues that the ALJ violated the treating physician rule in the weight he gave to the opinions expressed by Shelly Williams, D.O. (Plf. Brief at 12-14; Reply Brief at 2-3, docket # 15). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[2] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to

---

[2] "We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. § 404.1527(d)(3).

the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of

factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff alleges a December 1, 2007, onset of disability and her disability insured status expired on March 31, 2009. It was plaintiff's burden on her claim for DIB benefits to submit evidence demonstrating that she was disabled on or before March 31, 2009. *See Moon v. Sullivan*, 923 F.2d at 1182. No medical professional providing treatment during the period at issue offered an opinion suggesting that plaintiff had any functional limitations beyond those indicated in the ALJ's factual finding regarding plaintiff's RFC. (A.R. 367-69, 373-83, 433, 425-28, 443-45, 455, 457-60, 469-71, 500-01, 507-08, 515-16, 540-42).

Plaintiff relies on evidence generated after her date last insured in her attempt to prove that she was disabled on or before March 31, 2009. Documents generated after expiration of plaintiff's disability insured status are "minimally probative" and are considered only to the extent that they illuminate a claimant's health before the expiration of her insured status. *See Higgs v.*

*Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also Van Winkle v. Commissioner*, 29 F. App'x 353, 358 (6th Cir. 2002) ("Evidence relating to a time period outside the insured period is only minimally probative.").

Plaintiff's first interaction with Dr. Williams did not occur until October 2009, seven months after her disability insured status expired. Williams's first encounter with plaintiff was a "routine physical" on October 13, 2009. (A.R. 591). It is well established that a single visit does not suffice to establish a treating physician relationship.[3] *Kornecky v. Commissioner*, 167 F. App'x 496, 506-07 (6th Cir. 2006). "Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506–07. Plaintiff's second visit with Dr. Williams was more than a year after the first. (A.R. 588-90). It was a "routine general medical examination" on November 3, 2010. (A.R. 588). The third visit did not occur until November 30, 2010. It was a "routine" gynecological examination.[4] (A.R. 585-87). The opinions supplied by Dr. Williams were "minimally probative" because she had no treating physician relationship with plaintiff on or before March 31, 2009. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).

Plaintiff testified that her last appointment with Dr. Williams had been on April 19, 2012, and that during that appointment they reviewed a RFC questionnaire. (A.R. 37). Williams wrote down *plaintiff's responses* to the questions. Plaintiff stated that she could only sit for "20 to

---

[3]Even assuming that a single visit could establish a treating physician relationship, no such relationship would have existed in this case until more than one-half year after plaintiff's date last disability insured.

[4]The other progress notes from Dr. Williams are dated February 28 and June 22, 2001 (A.R. 575-84), and January 19 and April 19, 2012 (A.R. 572-74, 632-35).

30 minutes" and that she had been "first limited in these activities" since "January 2008." (A.R. 38). On April 19, 2012, Dr. Williams signed the questionnaire which is labeled as a "Medical Provider's Assessment of Patient's Ability to do Physical Work-Related Activities." (A.R. 642-45). Among other things, it was asserted that plaintiff could sit no more than 90 minutes in an 8-hour workday, could stand and walk no more than 1 hour each during an 8-hour workday, could "never" lift 10 pounds and "never" perform any postural activities other than occasionally climbing ramps or stairs. (*Id.*). The ALJ found that RFC questionnaire responses were entitled to little weight:

> [O]n October 13, 2009, the claimant began receiving primary care with Shelly Williams, D.O. The claimant's primary concern was arthritic pain (Exhibit 7F). The claimant was referred to Robert Hylland, M.D., who saw the claimant on January 14, 2010, for osteoarthritis, particularly involving her lower back. The claimant started on a Medrol dosepak (Exhibit 7F). Her follow-up note shows that the claimant responded well to the Medrol dosepak and reported that the pain was almost completely resolved in every joint in her body. She had a largely normal physical examination and was to follow-up in two to three months (Exhibit 7F, p. 35).
>
> Records indicate that the claimant continued to see Dr. Williams infrequently and on a per-need basis. The claimant was primarily seen for routine care issues, such as flu or cold symptoms (Exhibit 7F). The claimant did not seek regular treatment for musculoskeletal pain complaints and physical examinations were often normal or made no mention of musculoskeletal limitations (Exhibit 7F). A recent physical examination from Dr. Williams, from November 30, 2011, showed that the claimant had normal spinal alignment, normal muscle strength, and good range of motion. She also had an intact neurological exam (ld., p. 6).
>
> * * *
>
> The claimant was seen by Dr. Williams on April 19, 2012. The claimant was seen for back pain and to discuss her disability application. The notes reflect that 45 minutes out the 60 minute appointment were spent discussing her disabilities. The doctor also discussed referring the claimant to pain management. Treatment notes indicate that the claimant was continued on conservative care and medication management (Exhibit 11F). Follow-up x-rays from April 26, 2012, showed lumbar spine degenerative changes. There was grade I anterolisthesis of L5 on S1. Her lumbar spine showed a stable lumbar spine study when compared with the prior study (Exhibit 12F).
>
> * * *

> On April 19, 2012, Dr. Williams, completed a medical source statement. The claimant had a number of limitations, including she could only lift and carry up to five pounds. She could never do any postural activities except for occasionally climbing ramp and stairs. She could not perform any handling or finger activities. The claimant was unable to work an eight-hour day (Exhibit 13F). There are a number of problems with this opinion. First, Dr. Williams did not begin treating the claimant until October 13, 2009, well after the DLI of March 31, 2009. Second, Dr. Williams indicated that her opinion first applied on January 2008. However, this makes no sense because the claimant herself admitted that she was riding a motorcycle until October 2008. Furthermore, the opinion is not consistent with the claimant's relatively normal physical examinations (Exhibit 7F), and the claimant's lumbar spine MRI which showed a stable lumbar spine study (Exhibit 12F). Finally, the claimant's testimony indicated that the doctor filed out the form primarily based upon the claimant's subjective complaints. Therefore, the opinion of Dr. Williams is given little weight.

(A.R. 20-21). There is more than substantial evidence supporting the ALJ's findings that the RFC form at issue was completed primarily on the basis of plaintiff's subjective complaints and that the objective evidence did not support the limitations suggested in the questionnaire responses. In addition, plaintiff testified that she drove a "1200 Honda VTX." (A.R. 47). This model is a large, V-twin motorcycle, weighing more than a few hundred pounds. Plaintiff's operation of the motorcycle during the period she claims to have been disabled certainly undermines Williams's opinion that as far back as January 2008, plaintiff could never lift more than 5 pounds. *See, e.g.*, *Olds v. Commissioner*, No. 3:13-cv-849, 2014 WL 3670175, at * 5 (D. Or. July 22, 2014); *Schultz v. Commissioner*, No. 13-cv-111, 2013 WL 6148176, at * 2-3 (W.D. Wisc. Nov. 22, 2013). The absence of a treating relationship with the claimant before the expiration of her disability insured status constitutes another "good reason" for discounting Dr. Williams's opinion because it was "minimally probative" of plaintiff's condition during the period at issue. *See Swain v. Commissioner*, 379 F. App'x 512, 517 (6th Cir. 2010); *see also Kostovski-Talevska v. Commissioner*, No. 5:13-cv-655, 2014 WL 2213077, at * 8 (N.D. Ohio May 28, 2014). I find no violation of the treating physician rule.

**2.**

Plaintiff argues that the ALJ committed error when he rejected opinions provided by a consultative examiner, Stephen Montes, D.O. (Plf. Brief at 12-15; Reply Brief at 2). There is "nothing fundamentally wrong with a lawyer sending a client to a doctor." *Blankenship v. Bowen,* 874 F.2d 1116, 1122 n. 8 (6th Cir. 1989) (*per curiam*). Courts have recognized that the results of a consultative examination should not be rejected "solely" because it was arranged and paid for by the plaintiff's attorney. *See Hinton v. Massanari*, 13 F. App'x 819, 824 (10th Cir. 2001) ("An ALJ may certainly question a doctor's credibility when the opinion, as here, was solicited by counsel. ... The ALJ may not automatically reject the opinion for that reason alone, however."). Some courts have criticized ALJs for referring to opinions like Montes's as "purchased opinions," but such statements do not provide a basis for overturning an ALJ's decision. *See, e.g.*, *Mason ex rel. Mason v. Astrue*, No. 10-621-M, 2011 WL 2670005, at * 6 (S.D. Ala. July 6, 2011); *Milan v. Commissioner*, No. 09-1065, 2010 WL 1372421, at *10 n. 3 (D. N.J. Mar. 31, 2010). Here, the ALJ did not reject Dr. Montes's opinions "solely" or even primarily on the basis that his one-time examination occurred on a referral from plaintiff's counsel. It was entirely appropriate for the ALJ to note that Montes had examined plaintiff on a referral from plaintiff's attorney and that the purpose of the examination was to generate evidence in support of plaintiff's claim for DIB benefits. *See DeVoll v. Commissioner*, No. 99-1450, 2000 WL 1529803, at * 1 (6th Cir. Oct. 6, 2000); *Pentecost v. Secretary of Health & Human Servs.*, No. 89-5014, 1989 WL 96521, at * 1 (6th Cir. Aug.22, 1989); *see also Gilmore v. Astrue*, No. 2:10-54, 2011 WL 2682990, at * 8 (M.D. Tenn. July 11, 2011).

Plaintiff argues that the ALJ should have given greater weight to the opinions of a consultative examiner. Dr. Montes saw plaintiff on one occasion, April 10, 2012 (A.R. 620), more than three years after her disability insured status expired. Dr. Montes was a consultative examiner not a treating physician. Because Montes was not a treating physician, the ALJ was not "under any special obligation to defer to his opinion[s] or to explain why he elected not to defer to [them]." *Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir. 2011); *see Peterson v. Commissioner*, 552 F. App'x 533, 539-40 (6th Cir. 2014). The opinions of a consultative examiner are not entitled to any particular weight. *See Peterson v. Commissioner*, 552 F. App'x at 539; *Norris v. Commissioner*, 461 F. App'x 433, 439 (6th Cir. 2012). The ALJ is responsible for weighing medical opinions. *See Buxton*, 246 F.3d at 775; *see also Reynolds v. Commissioner*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."); *accord White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). The ALJ found that the extreme restrictions suggested by Dr. Montes were not well supported by objective evidence and were inconsistent with the record as a whole:

> On April 10, 2012, the claimant was seen by Stephen Montes, D.O. The claimant had been referred by her attorney for an examination for Social Security Disability. At the examination, the claimant made a number of unsupported statements. For example, she stated the stopped working at her daycare in January 2008 due to physical limitations. She denied any problems with illicit drug usage. The claimant reported she continued to experience chronic achiness and stiffness. Dr. Monte[s]'s diagnoses included chronic pain syndrome, cervical and lumbar myositis, and bilateral carpal tunnel syndrome right greater than left. His recommendations included that the claimant follow-up with additional physical therapy (Exhibit 10F). The record does not show that the claimant followed up with further physical therapy.

* * *

> On April 10, 2010, Dr. Montes who saw the claimant for an examination for disability, after the claimant was referred by her attorney, wrote that the claimant was incapable of any gainful employment. The following permanent restrictions were suggested: no lifting greater than five pounds, no bending, no squatting, no kneeling, no crawling, no stair climbing, no vibratory tools or activities, no repetitive activities, no ladder climbing, no unprotected heights, no reaching overhead and walking limitations (Exhibit 9F; Exhibit 10F). The claimant was only seen by Dr. Montes for her disability application and not for treatment. The doctor stated that he had the opportunity to review multiple medical files for the claimant but he does not specify which records he reviewed. As such, it is unknown whether Dr. Montes reviewed any records for the time period prior to the DLI of March 31, 2009. Also, Dr. Montes did not specify what time period his opinion applied. Furthermore, the extreme limitations assigned are not consistent with the claimant's busy activities of daily living including riding a motorcycle until October 2008. Therefore, the opinion of Dr. Montes is given little weight.
> .

(A.R. 20-21). The ALJ is responsible for weighing conflicting medical opinions, not the court. *Buxton*, 246 F.3d at 775; *accord White v. Commissioner*, 572 F.3d at 284. The ALJ's decision to give little weight to Dr. Montes's opinions is well-supported and entirely consistent with applicable law.

**3.**

Plaintiff argues that the ALJ committed reversible error in failing to follow the vocational expert's answers to accurate hypothetical questions. (Plf. Brief at 15). Specifically, she argues that "the vocational expert testified that there were either no jobs or clearly an insufficient number of jobs available to Plaintiff under the accurate hypothetical question that was asked of her [by plaintiff's attorney]." (*Id.*). This argument does not provide a basis for disturbing the Commissioner's decision. Plaintiff's attorney's hypothetical questions gave full credibility to his client's testimony and assumed a RFC more restrictive than the one determined by the ALJ. RFC is an administrative finding of fact made by the ALJ. 20 C.F.R. §§ 404.1527(d)(2), (3). RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1); *see*

*Branon v. Commissioner*, 539 F. App'x 675, 677 n.3 (6th Cir. 2013); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.' "). The ALJ's factual findings regarding plaintiff's RFC and the credibility of her testimony are supported by more than substantial evidence. The ALJ was not bound to accept the VE's testimony in response to the attorney's hypothetical questions, which incorporated more significant functional restrictions than those found by the ALJ. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Gant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010).

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:  November 20, 2014          /s/  Phillip J. Green
                                   United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir.

2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).